## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

**CRIMINAL CASE NO. 12-102-JMH-CJS-1**
**CIVIL CASE NO. 14-7386-JMH-CJS**

**UNITED STATES OF AMERICA**                                                            **PLAINTIFF**

**v.**                                    **REPORT AND RECOMMENDATION**

**ZAFAR IQBAL NASIR**                                                              **DEFENDANT**

**\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\***

Defendant Zafar Iqbal Nasir has filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.  (R. 441).  The United States has filed its Response (R. 463), to which Defendant has filed a Reply (R. 473).  Having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation.  For the reasons stated below, it will be **recommended** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (R. 441) be **denied**.

## I.      FACTUAL AND PROCEDURAL HISTORY

On September 6, 2012, a federal grand jury returned an Indictment against Defendant Nasir and one co-Defendant.  (R. 1).  The Indictment's sole count alleged that Nasir and the co-Defendant conspired to knowingly and intentionally distribute Schedule I controlled substance analogues as defined in 21 U.S.C. § 802(32), knowing that the substances were intended for human consumption as provided in 21 U.S.C. § 813, in violation of 21 U.S.C. §§ 841(a)(1), 846.  A Superseding Indictment returned on October 4, 2012, named three additional co-Defendants.  (R. 11).  An arrest warrant for Nasir on the Superseding Indictment was issued on October 4, 2012.  (R. 15).  Nasir was

arrested on November 20, 2012, and pleaded not guilty at his arraignment proceeding the same day. (R. 51).

A Second Superseding Indictment was returned on January 10, 2013, adding three new co-Defendants to the alleged conspiracy and adding a second count against Nasir for distribution of controlled substance analogues.  (R. 83).  Nasir pleaded not guilty to all counts in the Second Superseding Indictment at his January 16, 2013, arraignment.  (R. 103).  A Third Superseding Indictment, filed February 7, 2013, added another co-Defendant to the conspiracy (R. 134), and a Fourth Superseding Indictment, filed August 1, 2013, added additional counts against Nasir related to the distribution and conspiracy to distribute controlled substances and controlled substance analogues.  (R. 264).  Nasir was arraigned on both of the Superseding Indictments and pleaded not guilty.  (R. 162; R. 288).

## A.     Guilty Plea and Sentencing

On October 21, 2013, Nasir appeared with counsel for rearraignment and entered a plea of guilty to Count 1 of the Fourth Superseding Indictment pursuant to a written Plea Agreement.  (R. 338; R. 340; R. 448).  Specifically, Nasir pleaded guilty to conspiring with others to:

> knowingly and intentionally distribute mixtures or substances containing detectable amounts of synthetic cannabinoids, including the substances 1-pentyl-3-(4-methyl-1-naphthoyl) indole, more commonly known as JWH-122, and 1-(5-fluoropentyl)-3-(1 naphthoyl) indole, more commonly known as AM-2201, which are both controlled substance analogues (as defined in 21 U.S.C. § 802(32)) of the Schedule I controlled substance 1-pentyl-3-(l-naphthoyl) indole, more commonly known as JWH-018, knowing that the analogue substances were intended for human consumption, as provided in 21 U.S.C. § 813, a violation of 21 U.S.C. § 841(a)(l), all in violation of 21 U.S.C. § 846.

(R. 264, at 1-2).

2

As part of the Plea Agreement, Nasir expressly agreed to waive his right to appeal his guilty plea and conviction and any determination made by the Court at sentencing so long as the length of the term of imprisonment imposed did not exceed the advisory Sentencing Guidelines range as determined by the Court at sentencing.  (R. 340, at 6).  Nasir also expressly waived his right to collaterally attack his guilty plea, conviction, and sentence, with the exception of any ineffective assistance of counsel claim.  (*Id.*).  In a sealed Supplemental Plea Agreement, Nasir agreed to assist the Government in the investigation and prosecution of all others involved in the conspiracy.  (R. 341).  In exchange for Nasir's plea, the Government agreed to dismiss the remaining counts against him and to recommend a decrease in his United States Sentencing Guidelines offense level by two in recognition of his acceptance of responsibility.  (R. 340, at 6).  The Government also agreed to consider filing a motion for downward departure of Nasir's sentence pursuant to Sentencing Guidelines § 5K1.1 in the event that his assistance proved substantial.  (R. 341).

At the rearraignment hearing, Nasir was placed under oath.  (R. 448, at 2-3).  The District Court questioned Nasir to ensure that he was fully competent to enter a plea of guilty and then confirmed that Nasir had seen a copy of the Fourth Superseding Indictment in this case.  (*Id*. at 3-4).  The Court further confirmed that Nasir had discussed the charges in the Indictment, and his case in general, with his attorney and that Nasir was fully satisfied with the advice, counsel and representation his attorney had provided him.  (*Id*. at 4).

The Court informed Nasir that it had before it a Plea Agreement and a supplement to that Agreement and questioned Nasir extensively to ensure that he understood all of the terms contained therein.  (*Id*. at 4-9).  The Court specifically asked Nasir if he had read the Plea Agreement, if defense counsel had gone over the Plea Agreement with him, if he understood the terms of the Plea

Agreement, and if he had signed the Plea Agreement; Nasir answered in the affirmative to all of these questions. (*Id*. at 4-5). The Court also asked Nasir if anyone had threatened him or attempted to force him into entering into the Plea Agreement, to which he responded, "No, nobody did." (*Id*. at 5).

The Court directed Assistant United States Attorney (AUSA) Robert M. Duncan to provide the pertinent provisions of the Plea Agreement. (*Id*.). AUSA Duncan summarized portions of the Plea Agreement, including the paragraphs pertaining to the essential elements of the charge to which Nasir was pleading guilty and the factual basis that supported those elements. (*Id*. at 5-7). AUSA Duncan further referenced the sections of the Plea Agreement detailing the maximum statutory punishment for the offense charged and the recommended Sentencing Guidelines calculations. (*Id*. at 6-7). AUSA Duncan explained the portion of the Plea Agreement wherein Nasir had agreed to waive certain appellate rights as well as his right to collaterally attack his guilty plea, conviction, and sentence but for claims of ineffective assistance of counsel. (*Id*. at 7). Nasir agreed that AUSA Duncan's overview of the Plea Agreement was consistent with his understanding of its terms. (*Id*. at 9).

The Court went over the potential penalties Nasir faced by pleading guilty in order to ensure that he understood the maximum penalties that could be imposed by law. (*Id*. at 9-10). The Court further explained how the Sentencing Guidelines operate and how they may be applied in Nasir's case. (*Id*. at 10). The Court informed Nasir that, after the plea but before sentencing, a Presentence Report (PSR) would be prepared by the Probation Office and then he would have the opportunity to review it with counsel and file any objections he may have to its contents. (*Id*. at 10). Nasir was advised that the Court would rule on his objections to the report, if any, prior to sentencing and then

determine what the applicable Guidelines range should be. (*Id*. at 10-11). Nasir was also advised that if the sentence imposed on him is more severe than what he expected, he would still be bound by his plea and would not be able to withdraw it. (*Id*. at 11). The Court informed Nasir of the rights he was giving up by pleading guilty, and Nasir confirmed he understood he was giving up these rights by entering his plea. (*Id*. at 11-13).

Turning to the facts of this case, the Court directed AUSA Duncan to read Count 1 of the Fourth Superseding Indictment. (*Id*. at 13-14). Nasir then admitted to the facts constituting the essential elements of Count 1. (*Id*. at 15-16). Specifically, Nasir confirmed that two or more persons formed an agreement or understanding to distribute a mixture or substance containing a detectable amount of JWH-122 and/or AM 2201, both of which are a controlled substance analogues. (*Id*. at 15). He admitted that at some point during the agreement or understanding, he knew the substance was a controlled substance analogue as defined by federal law and that the substance was for human consumption. He also confirmed he deliberately joined in the agreement knowing its purpose. (*Id*. at 15-16). When asked how Nasir pleaded to Count 1, Nasir responded, "Guilty." (*Id*. at 16).

After the colloquy, the Court concluded that Nasir was fully competent and capable of entering an informed plea. (*Id*. at 16). The Court further found that Nasir was aware of the nature of the charges and the consequences of the plea and that the plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. (*Id*. at 16-17). As such, the Court accepted the plea and adjudged Nasir guilty of Count 1 as charged in the Fourth Superseding Indictment. (*Id*. at 17).

Following Nasir's rearraignment and prior to his sentencing hearing, the Probation Office prepared the PSR. (R. 460). The PSR contained an extensive review of the facts of the case and

provided the calculations under the Sentencing Guidelines that placed Nasir at a base offense level of 30.  (*Id*. at 8, ¶ 19).  With a three-level reduction for acceptance of responsibility, Nasir's final base offense level was 27.  (*Id*. at 9, ¶ 27).  The PSR also contained an analysis of Nasir's background, including his criminal history.  (*Id*. at 9-15).  Nasir's criminal history yielded a criminal history score of 5,[1] however, two points were added pursuant to Sentencing Guidelines § 4A1.1(d) because Nasir committed this offense while under criminal justice sentence from another jurisdiction.[2]  (*Id*. at 11, ¶¶ 31, 32).  As such, Nasir's total criminal history computation of 7 placed him in a criminal history category of IV.  (*Id*. at ¶ 33).  Based on Nasir's total offense level of 27 and criminal history category of IV, he had a Sentencing Guidelines range of 100 to 125 months of imprisonment.  (*Id*. at 15, ¶ 54).

On December 16, 2013, Nasir appeared with counsel for sentencing.  (R. 351).  Defense counsel informed the Court that Defendant had no objections to the PSR and Nasir confirmed he had none.  (R. 450, at 2-3).  The Court reviewed Nasir's calculated offense level of 27 and his criminal history score of IV, concluding that the Sentencing Guidelines range was properly calculated at 100 to 125 months.  (*Id*.).  The Court then heard from counsel for the Government, defense counsel, and Defendant regarding what the appropriate sentence should be in light of the circumstances.  (*Id*. at 8-14).  The Government did file a Motion for Downward Departure from the Sentencing Guidelines

---

[1] Nasir had two prior offenses that contributed to his criminal history score calculation: 1) a conviction for bank fraud and mail fraud from United States District Court Case No.: 5:06-cr-00089-1-KSF for which he received three points; and 2) a conviction for Violation of Kentucky EPO/DVO from the Fayette County District Court case number: 07-M-06840 for which he received two points.  (R. 460, at 9-11).

[2] Nasir committed the offense in this case while on Supervised Release in United States District Court Case No.: 5:06-cr-00089-1-KSF.  (R. 460, at 11).  As the commission of the offense in this matter constituted a violation of Nasir's Supervised Release, the District Court ruled on the Supervised Release violation at the sentencing hearing held in this matter.  This is discussed in more detail below.

range based upon substantial assistance (R. 348), and, pursuant to its Motion, recommended Nasir be sentenced to a term of imprisonment of 65 months.  (R. 450, at 10-11).  Defense counsel requested a more significant downward departure, asking for a sentence of 40 months of incarceration.  (*Id*. at 11).  The Court ultimately granted the Motion for Downward Departure, sentencing Nasir to 50 months of incarceration followed by a 3-year term of supervised release.  (*Id*. at 15; R. 353).  The Court further sentenced Nasir to 12 months for his violation of the conditions of his Supervised Release in 5:06-cr-00089-1-KSF, which sentence was to be served consecutively to Nasir's sentence imposed in this case, for a total term of incarceration of 62 months.  (R. 450, at 17-18; R. 353, at 2).  Nasir did not appeal.

### B.    Post-Conviction Proceedings

On November 17, 2014, Nasir filed a Motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) seeking a reduction of his sentence under Amendment 782 to the Sentencing Guidelines.  (R. 439).  Nasir's Motion for sentence reduction was denied by the District Court on March 10, 2015.  (R. 457).  Nasir appealed the District Court's ruling (R. 458) and, on January 22, 2016, the Sixth Circuit Court of Appeals remanded the matter to the District Court for reconsideration.  (R. 490).  Upon reconsideration, the District Court again denied Nasir's Motion for sentence reduction reasoning that, despite the fact that Nasir was eligible for a sentence reduction under Amendment 782 to the Sentencing Guidelines, the 50-month sentence imposed was sufficient but not greater than necessary in Nasir's case.  (R. 493).  Nasir appealed and the Court of Appeals affirmed.  (R. 494; R. 504).

Now before the Court is Nasir's present Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (R. 441).  Nasir asserts four grounds in his

§ 2255 Motion.  In order of presentation of his claims, he alleges: 1) his criminal history score for purposes of sentencing was unconstitutionally assessed two points pursuant to Sentencing Guidelines §§ 4A1.1(b) and 4A1.2(k); 2) his counsel was constitutionally ineffective for a) failing to object to Nasir's criminal history score and the amount of synthetic cannabinoids Nasir allegedly conspired to distribute, b) failing to adequately explain his PSR to him, and c) failing to protect his interests in the written Plea Agreement; 3) he did not enter into his Plea Agreement in a knowing, intelligent, and voluntary manner; and 4) he did not, in fact, violate the Controlled Substances Act or 21 U.S.C. §§ 846 and 841(a)(1).  (*Id*. at 4-8).  At the conclusion of the Motion, Nasir requests an evidentiary hearing and appointment of counsel.  (*Id*. at 12).

The Government was ordered to respond to Nasir's § 2255 Motion.  (R. 446).  In its Response, the Government argues, among other things, that: 1) many of Nasir's claims are procedurally defaulted because he failed to bring them on direct appeal; 2) Nasir has failed to show that his counsel was ineffective; 3) Nasir's plea was knowing and voluntary; and 4) Nasir's claim that he did not violate the law fails because the District Court rejected this argument pre-sentencing. (R. 463).  The Government attaches to its Response the Affidavit of Derek Gordon, Nasir's trial counsel.  (R. 463-1).

Nasir filed his Reply to the Government's Response to his § 2255 Motion.  (R. 473).  In his Reply, Nasir disputes that his claims are procedurally defaulted and provides further argument in support of his claims.  In addition, Nasir presents three arguments not raised in his Motion: 1) his counsel was ineffective for advising him to enter into a Plea Agreement he did not understand; 2) 21 U.S.C. § 802(32), providing the definition for "controlled substance analogue," is

unconstitutionally vague; and 3) the District Court erred in determining the amount of synthetic cannabinoids and analogues he conspired to distribute.[3]

## II.   ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *See* § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

---

[3] In his introduction to his Reply brief, Nasir mischaracterizes the Government's Response to his § 2255 Motion as a motion to dismiss and argues that "the party moving for dismissal and/or summary judgment bears a further obstacle of demonstrating a definitive absence of genuine issue(s) of material fact in the petition..." (R. 473, at 2). However, this is a misstatement of the law. In the context of § 2255 motions, the burden is on the defendant to prove his allegations beyond a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

In sum, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).  A defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

### A.    Nasir's guilty plea was knowing, intelligent, and voluntary.[4]

In his Motion, Nasir merely states "Movant Nasir entered and accepted the plea agreement in an unknowing, unintelligent, and involuntary manner," without providing any factual basis or citing to any law.  (R. 441, at 6).  However, in his Reply, Nasir expands upon this argument by alleging his lack of scientific knowledge rendered him unable to intelligently enter a plea in this case. (R. 473, at 6-9).  In his words, he "knew nothing of the receptor binding and activation studies regarding AM 2201 in the field of pharmacology" (*id*. at 6), and could not have understood "exactly what the pharmacological effects of synthetic marijuana containing JWH-122 and AM 2201, alleged analogues of the Schedule I controlled substance JWH-018 were"  (*id*. at 7).  Nasir claims that he "has never received training as a chemist or pharmacist and was nothing more that a shopkeeper employed in a small corner grocery store. . ." (*Id*. at 6-7).  Nasir further argues he did not understand the "language contained in the plea agreement which demanded that he forfeit or waive a plethora of constitutional rights." (*Id*. at 8).  Finally, Nasir asserts that his guilty plea was involuntary because

---

[4] Defendant's claim that his Plea Agreement was not knowing, intelligent, and voluntary is a non-ineffective assistance of counsel claim that would be more appropriately addressed below in Section C. However, the merits of this claim are addressed first due to its importance to many of Defendant's other claims for relief.  Although the merits are addressed here, this claim is subject to the same procedural default and waiver analysis as Defendant's other non-ineffective assistance of counsel claims below.

the "existence of severe mandatory minimum sentences and potential life sentences have [sic] destroyed any semblance of a 'level playing field' between defendants and prosecutors." (*Id*. at 9).

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). Rule 11 of the Federal Rules of Civil Procedure

> requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged.

*United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005) (citing *Webb*, 403 F.3d at 378-79). Rule 11 is meant "to assist the district court in determining whether a defendant's guilty plea is truly voluntary and to produce a complete record of the factors relevant to this determination." *Id*. (citing *McCarthy v. United States,* 394 U.S. 459, 465 (1969)).

"Once the district court conducts the required colloquy under Federal Rule of Criminal Procedure 11, and finds the plea knowingly and voluntarily entered, absent compelling reasons to the contrary, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established." *United States v. Sprague*, Nos. 2:06–cr–19, 2:11–cv–299, 2015 WL 630382, at *8 (E.D. Tenn. Feb.12, 2015) (citing *Gray v. Commissioner*, 708 F.2d 243, 246 (6th Cir.1983), *cert. denied*, 466 U.S. 927 (1984)); *see also United States v. Hyde*, 520 U.S. 670, 677 (1997) (holding a guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. . .but a grave and solemn act, which is accepted only with care and discernment." (internal quotation marks and citations omitted)). In other words, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any

findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).   Review of the plea colloquy conducted in this case reveals that Nasir's plea was knowing, voluntary, and intelligent.

As to Nasir's understanding of the nature of the offense charged and the factual basis for concluding that he committed the offense, paragraph 2 of the Plea Agreement contains a list of the essential elements of Count 1 of the Fourth Superseding Indictment and paragraph 3 contains a section detailing the facts that establish the essential elements of the offense.  (R. 340, at 1-5).  At his rearraignment hearing, Nasir acknowledged that he had read the Plea Agreement and understood its terms before signing it:

> THE COURT:  I have in front of me a plea agreement as well as a sealed supplement to that agreement.  Both documents are signed by Mr. Duncan and Mr. Gordon.  Is this your signature on each of them as well?
>
> THE DEFENDANT: Yes, I signed it too.
>
> THE COURT:  Before you signed these documents, did you have a chance to read them?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT:  Did you have an ample opportunity to discuss them with Mr. Gordon?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT:  Are you satisfied in your own mind that you understand all the terms of these two documents?
>
> THE DEFENDANT: Yes, I do.

(R. 448, at 4-5).

12

Further, at the request of the District Judge, AUSA Duncan read Count 1 of the Fourth Superseding Indictment aloud. (*Id*. at 13-14).  After the count was read, the District Judge engaged in a dialogue with Nasir regarding the elements of the offense charged and Nasir admitted that each element of the offense charged was satisfied.  Specifically, the District Judge engaged Nasir in the following colloquy:

> THE COURT: Mr. Nasir, in your plea agreement, you have a number of facts that are related to -- to the [count] which you admit. Basically the -- in these facts that you say there are two or more persons formed, reached or entered into an agreement or understanding to distribute a mixture or substance containing a detectable amount of JWH-122 and/or AM-2201, both of which are a controlled substance analogue; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: At some point during the - this existence or the life of the agreement or the understanding, you knew that the substance was a controlled substance analogue; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Third, during the term and existence or the life of the agreement, you knew that the substance was a controlled substance analogue as defined by federal law; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Fourth, that at some time during the existence or life of the agreement or understanding you knew that the substance was for human consumption; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Finally, that some time during the life or existence of the agreement you knew the purpose of the agreement and deliberately joined that agreement or understanding; is that correct?

THE DEFENDANT:  Yes, I do.

(*Id*. at 15-16).

Giving Nasir's solemn declarations the strong presumption of verity due under the law, it is apparent that Nasir understood the nature of the offense charged and the factual basis for concluding that he committed the offense.  As such, his arguments to the contrary are without merit.

Nasir argues he did not understand that by entering into the Plea Agreement he was waiving many of his constitutional rights.  This argument, however, is also directly refuted by the record. Paragraph 8 of the written Plea Agreement states that Nasir waives: 1) his right to appeal his guilty plea and conviction; 2) his right to appeal his sentence so long as the length of the term of imprisonment imposed does not exceed the advisory Sentencing Guidelines range as determined by the Court at sentencing; and 3) his right to collaterally attack the guilty plea, conviction, and sentence, with the exception of any ineffective assistance of counsel claim.  (R. 340, at 6).  Again, Nasir agreed that he had read the Plea Agreement and understood its terms before signing it.  (R. 448, at 4-5).  These waivers were also recited aloud by AUSA Duncan at the rearraignment hearing without objection from Nasir.  (*Id*. at 7).

In addition, during the plea colloquy, the District Judge carefully reviewed with Nasir the rights he would be giving up by pleading guilty:

> THE COURT:    Normally, you would have the absolute right to appeal your sentence, but in your plea agreement you give up that right except if I depart upward from that guideline range.  If you are sentenced to prison, you will not be released on parole because parole has been abolished in the federal system.  Finally, if the sentence is more severe than you expected, you will still be bound by your plea and will have no right to withdraw it. Understand all that?

THE DEFENDANT: Yes, I do.

THE COURT:          Have any questions about that?

THE DEFENDANT: No, thank you.

THE COURT:          We had a trial scheduled in this case for I believe it's November 5th.  Do you remember when I set that trial date?

THE DEFENDANT: November 5th?

THE COURT:          Yes, November 5th.

THE DEFENDANT: Yes.

THE COURT:          You understand if you wanted to continue to plead not guilty you would have a right to that trial.  You understand that?

THE DEFENDANT: I understand that.

THE COURT:          And that would be a trial by jury.  You understand that?

THE DEFENDANT: I understand that.

THE COURT:          You would have the right to the assistance of counsel for your defense.  You understand that?

THE DEFENDANT: Yes, I do.

THE COURT:          If you could not afford counsel, counsel would be appointed to represent you.  You understand that?

THE DEFENDANT: Yes, I do.

THE COURT:          The - - excuse me, at that trial you would have the right to see, hear and have cross examined all witnesses against you.  You understand that?

THE DEFENDANT: Yes, I do.

THE COURT:          You would have a right to compulsory process.  In other words, the court would subpoena witnesses to testify in your defense.  Do you understand that?

15

THE DEFENDANT:  Yes.

THE COURT:  You would have a right, too, to remain silent.  You could not be forced to testify.  Obviously if you were at that trial you would have the right to testify, but it would be purely voluntarily and - - voluntarily and in your own defense.  You understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  And you would have the right to make the government prove this charge against you beyond a reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Now, if I accept your plea there will never be a trial in this matter and you will have waived or given up your right to a trial as well as those rights associated with a trial that I have just described.  Do you understand that?

THE DEFENDANT:  Yes, I do.

(*Id*. at 11-13).  Again, giving these declarations the presumption of verity due under the law, Nasir's present claim that he did not understand the constitutional rights he was giving up pleading guilty is meritless and does not warrant habeas relief.

Nasir also attempts to challenge the validity of his plea by arguing that the "severe mandatory minimums and potential life sentences" that exist under federal law rendered his plea involuntary because they eliminated "any semblance of a 'level playing field' between defendants and prosecutors." (R. 473, at 9).  This argument lacks merit for two reasons.  First, Nasir was not subject to either a mandatory minimum sentence or a life sentence.  Thus, he cannot argue that the existence of such sentences affected the validity of his plea.

16

Second, even had Nasir been subject to a mandatory minimum or life sentence, this would not render his plea involuntary. "Determining whether a plea was made voluntarily requires an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The record should reflect a full understanding of the direct consequences of pleading guilty so that the plea represents a voluntary and intelligent choice among the alternatives. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The fact that a defendant would not have pleaded guilty but for the opportunity to limit the potential penalty does not necessarily demonstrate that the guilty plea was not the result of a free and rational choice. *Id*. Thus, the fact that an offense carries potential serious penalties does not convert an otherwise voluntary plea into a involuntary one.

Here, the record reflects that Nasir fully understood the potential consequences of his entering a guilty plea to the offense charged and that he was not forced or threatened to enter said plea. At the rearraignment hearing, AUSA Duncan summarized relevant portions of the Plea Agreement aloud. During that summary, he recited the following:

> MR. DUNCAN:    At paragraph 4 of the plea agreement sets forth the maximum statutory punishment for count one which is imprisonment for not more than twenty years, a fine of not more than $1 million and a term of supervised release of not less than three years. There is also a mandatory special assessment or court costs of $100.00 that applies.

(R. 448, at 6). The District Judge also informed Nasir of these penalties under the law and asked Nasir if he understood those penalties. (*Id*. at 9-10). Nasir responded, "I do." (*Id*. at 10). When asked if anybody had threatened or forced him to enter into this Plea Agreement, Nasir stated, "No, nobody did." (*Id*. at 5). As Nasir understood the nature of the offense charged, the factual basis for concluding he committed said offense, the constitutional rights he was giving up by pleading guilty,

17

and the direct consequences of his plea, he was able to make a voluntary choice among the alternatives. Nasir also explicitly stated that his plea was not the product of intimidation or force. As Nasir's plea was knowing and voluntary, this ground for relief is without merit.

Moreover, after Nasir entered his plea of guilty, the District Judge found the plea to be valid on the record and, therefore, accepted the plea:

> THE COURT:    I am satisfied with the responses given during this hearing and make the following finding on the record. It is the finding of the court in the case of the United States of America v. Zafar Iqbal Nasir that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent basis [in] fact containing each of the essential elements of the offense.

(*Id*. at 16-17). Based on this finding, the validity of Nasir's plea and corresponding guilt are deemed to be conclusively established. Further, Nasir has not presented any compelling reasons to overcome this finding and the acceptance of his plea. As Nasir has failed to show his plea was unknowing, unintelligent, and involuntary, he is not entitled to relief pursuant to § 2255 and it will be recommended that these claims be rejected as meritless.

**B.    Nasir's claims of ineffective assistance of counsel have no merit**.

Nasir sets forth various allegations of ineffective assistance of counsel in his § 2255 Motion. In particular, Nasir argues that his counsel was constitutionally ineffective for: a) failing to object to his criminal history score and the amount of synthetic cannabinoids he allegedly conspired to distribute; b) failing to adequately explain his PSR to him; and c) failing to protect his interests in

the written Plea Agreement.[5]  (R. 441, at 6).  For the first time in his Reply, Nasir argues that his counsel was ineffective for advising him to enter into a plea agreement he did not understand (R. 473, at 6-9) and for directing him to remain silent and agreeable during the Rule 11 colloquy and sentencing.  (*Id*. at 11).

The Supreme Court has held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To meet this standard, the Court set forth a two-part test.  First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88.  In reviewing this prong, the lower court is to apply a deferential standard, i.e. there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him.  *Id*. at 691-94.  Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  Defendant must establish both prongs by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.  Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment.  *Id.* at 691.

---

[5] Nasir cites to three Sixth Circuit cases in support of his ineffective assistance of counsel arguments: *United States v. Walton*, 908 F.2d 1289 (6th Cir.1990); *United States v. Gibbs*, 174 F.3d 762 (6th Cir. 1999); and *United States v. Tackett,* 113 F.3d 603, 613 (6th Cir. 1997).  However, a review of these cases shows they do not support Nasir's ineffective assistance of counsel claims.  Neither *Gibbs* nor *Tackett* involved claims of ineffective assistance of counsel.  Further, *Walton* was a consolidated direct appeal in which the court declined to consider the defendant's ineffective assistance of counsel claim given the procedural posture.

In the context of a guilty plea, where a defendant is represented by counsel and enters a guilty plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). While the deficient performance prong of the *Strickland* test remains the same, to establish prejudice a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (quoting *Hill*, 474 U.S. at 58-59). Both prongs of the test must be met before a court finds ineffective assistance, but courts are not required to conduct an analysis under both. *Strickland*, 466 U.S. at 697. If the court finds a defendant cannot meet one prong, it need not address the second prong. *Id.*

> **1.    Nasir has not met his burden of establishing counsel was ineffective for advising him to enter into the Plea Agreement and/or instructing him to remain quiet and agreeable.**

In Reply, Nasir makes another attempt to challenge his guilty plea by arguing his counsel was ineffective for advising him to enter into the Plea Agreement when he did not understand it and for advising him to remain silent and agreeable at the rearraignment and sentencing hearings. Generally, the raising of these arguments for the first time in a reply filing is improper and the newly-raised claims could be rejected on this basis. *See Sanborn v. Parker*, 629 F.3dI 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also United States v. McCorkle*, No. 1:07-cr-288, 2010 WL 2131907, at *7 (W.D. Mich. Mar. 30, 2010)(collecting cases); *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). It will therefore be recommended that these contentions be denied as procedurally improper. In addition, as discussed

below, it will also be recommended that these contentions be rejected on their merits, which discussion has been included to complete the record.

With regard to his claim that counsel advised him to enter into a Plea Agreement he did not understand, Nasir has failed to demonstrate deficient performance by counsel. As discussed above, the record of the rearraignment hearing demonstrates that Nasir's plea was knowing, intelligent, and voluntary and that Nasir fully understood the terms of his Plea Agreement. In addition to the record of the proceedings, Nasir's former counsel submitted an Affidavit in which he refutes Nasir's claim that he did not understand the terms of his Plea Agreement. (R. 463-1). In the Affidavit, counsel avers that Nasir "appeared to clearly understand the deal I negotiated for him and I in no way coerced him to accept it. His acceptance was completely voluntary." (*Id*. at 2). Thus, defense counsel's performance was not deficient for advising Nasir to enter into the Plea Agreement of which Nasir had full understanding.

Additionally, Nasir's claim that he was advised by counsel to remain silent and agreeable during the rearraignment and sentencing hearings is also not supported by the record. Specifically, there is nothing to suggest, from the record of either hearing, that Nasir's responses and statements in open court were anything but his own. At no point during the proceedings did counsel coach Nasir through the process or otherwise prevent him from speaking. In fact, towards the end of the sentencing hearing, after counsel presented argument but before the Court imposed sentence, defense counsel informed the Court that Nasir "may have something to say." (R. 450, at 13). Nasir then proceeded to offer his own statement to the Court:

> THE DEFENDANT: I just want to say sorry for everything that have happened in my life, and I have made a big mistake and I certainly apologize for that and what I have done. I have embarrassed

21

> my family and everybody know - - that know me for the
> second time, and I am very sorry for that.  Thank you.

(*Id*. at 13-14).  Further, Nasir's statements at the rearraignment hearing contradict his present assertions that his counsel was ineffective.  During rearriagnment, Nasir stated that he had discussed his case with counsel and agreed that he "was fully satisfied with the advice, counsel and representation" provided him.  (R. 448, at 4).  Had Nasir been dissatisfied with counsel's advice prior to rearraignment and sentencing, he could have expressed his dissatisfaction at this time, but did not. Instead, he expressed his full satisfaction with counsel's representation.  As the record contradicts Nasir's present claim of ineffectiveness, Nasir has failed to show deficient performance in this regard.  As Nasir has not shown deficient performance, the Court need not consider the prejudice prong under *Strickland*.  *Strickland*, 466 U.S. at 697.

### 2. Nasir has not met his burden of establishing his counsel was ineffective for failing to protect his "vital interests" in the Plea Agreement.

In Nasir's § 2255 Motion, he argues that the his counsel was ineffective for failing to protect his "vital interests" in the Plea Agreement.  (R. 441, at 5).  However, Nasir has not provided any facts to support this claim.  When a party fails to adequately argue a claim, the Court may consider the claim abandoned.  *United States v. Hough*, 276 F.3d. 884, 891 (6th Cir. 1996) (holding that because parties "have failed to adequately brief this court, we consider the [parties'] claims to have been abandoned"); *see Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel); *see also Tucker v. United States*, 423 F.2d 655, 656 (6th Cir.1970) (pure conclusory statements in a § 2255 motion, absent any specific allegations as to how, when, and where the claimed constitutional infringements occurred, would not be credited).  While Nasir claims that his counsel failed to protect

his "vital interests" in the Plea Agreement, he does not identify what interests were not protected nor does he articulate what counsel did or failed to do that resulted in any prejudice to him. Absent any factual support, Nasir cannot meet his burden of showing his counsel was ineffective in this respect.

Further, the record does not support Nasir's claim that his counsel failed to protect his interests in the Plea Agreement. To the contrary, the record demonstrates that counsel was able to negotiate a plea agreement for Nasir that resulted in his receiving a sentence well below that which he could have received. Before entering his guilty plea in this matter, Nasir was charged with various other drug-related counts in the Fourth Superseding Indictment. (R. 264). The maximum penalties for the offenses charged were a term of imprisonment of not more than twenty years, a fine of not more than $1,000,000.00, a term of supervised release of not less than three years, and a mandatory special assessment or court costs of $100.00. (*Id*. at 18).

In exchange for his guilty plea, the Government agreed to dismiss all but Count 1 of the Fourth Superseding Indictment. (R. 340, at 1). In addition, Nasir obtained the benefit of a three-level reduction in his offense level for acceptance of responsibility and a downward departure for providing substantial assistance to the Government. With the application of these reductions, Nasir was sentenced to a term of imprisonment of 50 months on Count 1, with a three-year term of supervised release to follow. (R. 353). This sentence is significantly lower than the recommended Guidelines range of 100 to 125 months of incarceration and substantially lower than the 20-year maximum sentence Nasir could have received had he proceeded to trial. Further, Nasir received the lowest term of supervised release permitted under the law. Thus, the record reflects that counsel protected Nasir's interests in the Plea Agreement and had a sound basis for advising Nasir to enter

into said Plea Agreement.  As such, Nasir has not met his burden of demonstrating deficient performance on the part of counsel and has not shown he received ineffective assistance.

### 3.  Nasir has not met his burden of establishing counsel was ineffective for failing to adequately explain his Presentence Report (PSR) to him.

Nasir also alleges in his Motion that counsel was ineffective for failing to adequately explain his PSR to him.  However, the records of the rearraignment and sentencing hearings in this matter directly refute Nasir's claim.  At the rearraignment hearing, the Court explained to Nasir that a PSR would be prepared by the Probation Office.  (R. 448, at 10-11).  The Court informed Nasir that he had the right to review the PSR and file any objections to the information contained therein, which objections would be ruled upon by the Court prior to sentencing. (*Id*.).  The Court advised Nasir that, after ruling on the objections, the PSR would be used to determine the appropriate Guidelines range for sentencing purposes.  (*Id*.).  Therefore, Nasir was aware of the purpose and importance of the PSR prior to his sentencing hearing.[6]

At the sentencing hearing, the Court inquired of the parties if there were any objections to the presentence report, taking special care to direct questions to Nasir.  When given the opportunity to raise any issues he had with the PSR prepared in his case, Nasir did not state he needed further explanation on its contents.  The Court specifically asked:

> THE COURT:    Are there any objections to the presentence report on behalf of the United States?
>
> MR. DUNCAN:   No, Your Honor.

---

[6]As discussed above, this is not Nasir's first federal conviction.  Nasir was previously convicted of bank and mail fraud in federal Case No: 5:06-cr-00089-1-KSF.  Thus, Nasir has been through this process before, is familiar with sentencing proceedings, and knows the role the PSR plays in determining his sentence.

| | |
|---|---|
| THE COURT: | On behalf of the defendant, Mr. Gordon? |
| MR. GORDON: | I don't believe there was any, Your Honor. |
| THE COURT: | And Mr. Nasir, you have seen this report yourself? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Do you have anything to say about it? |
| THE DEFENDANT: | No. |

(R. 450, at 2-3).  If Nasir, knowing the role the PSR would play in his sentencing, felt that his counsel had not adequately explained the document to him, he had the opportunity to bring this issue before the Court at sentencing.  Instead, Nasir stated that he had nothing to say about the PSR and that he was satisfied with his counsel's advice and representation.  These statements on the record contradict Nasir's current allegations that his counsel did not explain the PSR to him.

Also contradictory to this allegation, the Affidavit submitted by Nasir's trial counsel states that counsel "provided [Nasir] his Presentence Investigation Report and throughly explained it to him."  (R. 463-1, at 1).  This statement taken with Nasir's statements on the record, render Nasir's mere allegation of ineffectiveness of counsel for failure to adequately explain his PSR to him insufficient to meet his burden of showing deficient performance.  Thus, no analysis of prejudice is required.

> **4.    Nasir has not met his burden of establishing that counsel was ineffective for failing to object to the amount of synthetic cannabinoids Nasir conspired to distribute.**

Nasir claims that his counsel was ineffective for failing to object to the "unfactual and concocted drug amounts" which were used by the Court to determine his final sentence.  (R. 473, at 11-12).  However, again, Nasir has not provided any factual support for this claim.  Under the law,

Nasir's conclusory statement of ineffectiveness, without more, is rendered abandoned. *Hough*, 276 F.3d. at 891; *see Elzy*, 205 F.3d at 886; *see also Tucker,* 423 F.2d at 656. While Nasir claims that the amount of synthetic cannabinoids attributed to him at sentencing was incorrect, he makes no further factual allegations to support his claim. He does not provide his reasoning for his conclusion that the amount of drugs was incorrect nor does he suggest an amount of drugs he would deem appropriate. Absent any factual support, Nasir cannot meet his burden of showing his counsel was ineffective in this regard.

Further, this claim fails on the merits because it is refuted by the record. First, both the Plea Agreement and the PSR in this case contained statements regarding the amount of synthetic cannabinoids Nasir conspired to distribute. The Plea Agreement states, "[f]or the purposes of this plea agreement, Nasir admits that he conspired with others to distribute 700-1,000 kilograms of synthetic cannabinoids and analogues of synthetic cannabinoids, including Happy Tiger brand containing the substance JWH-122, which is an analogue of JWH-018." (R. 340, at 5). Again, Nasir acknowledged at rearraignment that he had read the Plea Agreement and understood its terms before signing it. When asked how Nasir wanted to plead to the charged offense, Nasir pleaded guilty.

Likewise, the PSR prepared prior to sentencing contained language that Nasir conspired to distribute 700-1,000 kilograms of the drugs. (R. 460, at 7, 8). Although Nasir himself admitted he reviewed the PSR, he denied having any objection to its contents at sentencing. There was no error by counsel for failure to object to the amount of drugs attributed to Nasir given the clear factual basis for the plea that was admitted by Nasir in open court and affirmed by him at sentencing. *See, e.g., United States v. Coleman*, No. 5:07-cr-185-JBC, 2010 WL 5173205, at *5 (E.D. Ky. June 7, 2010) *adopted by* 2010 WL 5173217 (E.D. Ky. Dec. 14, 2010) (citing *United States v. Laskowski*, 1 F.

App'x 363, 367 (6th Cir. 2001) (where defendant stipulated to drug amount in plea, defendant could not challenge effectiveness of his counsel on that basis) (further citations omitted)). Accordingly, Nasir has not met his burden of demonstrating deficient performance of his counsel and has not shown he received ineffective assistance.

### 5. Nasir has not met his burden of establishing that counsel was ineffective for failing to object to his criminal history score.

Nasir argues his counsel was ineffective for failing to object to his criminal history score. (R. 441, at 5). Although he does not articulate the objections he believes his counsel should have made, Nasir argues throughout his Motion and Reply that his criminal history calculation was unconstitutionally assessed two points pursuant to Sentencing Guidelines §§ 4A1.1(b) and 4A1.2(k). As such, this Court will evaluate whether defense counsel was ineffective for failing to object to Nasir's criminal history score on the basis that it was erroneously assessed two points pursuant to §§ 4A1.1(b) and 4A1.2(k).

Section 4A1.1, containing subsections (a)-(e), provides that the "total points from subsections (a) through (e) determine the criminal history category" of a defendant. Subsection (b) directs two points be added to a criminal history score for "each prior sentence of imprisonment of at least sixty days. . ." U.S.S.G. § 4A1.1(b). Section 4A1.2 provides definitions and instructions for computing a defendant's criminal history and § 4A1.2(k)(1) instructs that "in the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c) as applicable." U.S.S.G. § 4A1.2(k)(1).

In Part B of Nasir's PSR, detailing his criminal history, the Probation Officer identified two adult criminal convictions that factored into Nasir's criminal history score under § 4A1.1. (R. 460, at 9-11). The first is a federal conviction in Case No.: 5:06-cr-89-1-KSF involving bank and mail fraud charges for which Nasir received a sentence of 31 months' imprisonment and 5 years supervised release. (*Id*. at 9). While said sentence was imposed January 26, 2007, Nasir remained free on bond and was given permission to self surrender to serve his term of imprisonment on August 8, 2007. (*Id*. at 10). However, in June 2007, the United States Pretrial Services Office submitted a violation letter to the Court stating that Nasir had violated his bond conditions and requested a warrant be issued. (*Id*.). A warrant was issued and returned executed on August 6, 2007. (*Id*.). Nasir received a three-point assessment to his criminal history score for this conviction, pursuant to § 4A1.1(a). (*Id*. at 9).

The second conviction that factored into Nasir's criminal history score is a Fayette County, Kentucky conviction for Violation of a Kentucky EPO/DVO in Case No.: 07-M-06840. (*Id*. at 11). In that case, a domestic violation order was issued by the state court on April 9, 2007, based off of allegations from Nasir's wife that he had abused her (Case No.: 07-D-225-01). (*Id*.). On May 23, 2007, a show cause order was issued based on Nasir's alleged failure to obtain a domestic violence assessment as directed by the court. (*Id*.). Nasir was found to have violated the court's order on July 12, 2007, and was sentenced to serve 90 days in jail, followed by two years of probation. (*Id*.). On August 20, 2007, the state court revoked Nasir's probation and ordered that he serve the balance of his probation sentence concurrently with the federal sentence he was serving in Case No.: 5:06-CR-89-1-KSF. (*Id*.). Nasir received a two-point assessment to his criminal history score for this

conviction pursuant to §§ 4A1.1(b) and 4A1.2(k).  It is this two-point assessment that Nasir claims was error.

Nasir admits that he was sentenced to 90 days in jail and two years of supervised probation for Violation of a Kentucky EPO/DVO.  However, he claims that, due to his arrest on the federal bond violation warrant in 5:06-CR-89-1-KSF, he was unable to complete the 90-day sentence and, thus, could not have began serving the two years supervised probation.  As a result, he concludes that he never served 90 days in jail, much less two years, and should not have been assessed two additional points for this conviction.

Nasir's argument is unpersuasive.  As noted above, Nasir served his term of imprisonment for violating a Kentucky EPO/DVO while he was serving his sentence of 31 months for his federal conviction because the state court ran its sentence concurrently with Nasir's federal sentence.  The Sixth Circuit has held that two concurrently served sentences should be treated as two separate sentences for the purpose of calculating a defendant's criminal history score if the sentences were imposed as the result of unrelated offenses.  *See, e.g., United States v. Brandenburg*, 83 F. App'x 687 (6th Cir. 2003).  Prior convictions are unrelated for purposes of a criminal history score if "they proceed to sentencing under separate docket numbers, do not arise from the same nucleus of facts, lack an order of consolidation, and result in different sentences."  *Green v. United States,* 65 F.3d 546, 548-49 (6th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996).  Nasir's two convictions are demonstrably unrelated under this standard.  Therefore, there was no error counting both convictions when determining Nasir's criminal history score.

As Defendant's criminal history score was not unconstitutionally assessed two points, his counsel was not ineffective for failing to object to his criminal history score on this basis.  Further,

in the Affidavit submitted by Nasir's trial counsel, counsel avers that he "diligently investigated Movant's criminal record and checked with the appropriate officials and determined that Movant was in fact convicted of the crime he disputes, and [trial counsel] determined that the Presentence Investigation Report computation was not inaccurate."  (R. 463-1, at 1).  Based on the foregoing, Nasir has failed to meet his burden of demonstrating that his counsel's performance was deficient and, therefore, this claim has no merit.[7]

### C.   Nasir's non-ineffective assistance of counsel claims are barred by waiver, are procedurally defaulted, and are without merit.

#### 1.   Nasir's non-ineffective assistance of counsel claims are barred by waiver.

Nasir's non-ineffective assistance of counsel claims are barred by the waiver in this plea agreement.  It is well settled that a defendant may waive any right, including a constitutional right, in a plea agreement provided that the waiver is knowing and voluntary.  *Hardin v. United States,* 595 F. App'x 460, 461 (6th Cir. 2014); *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004). The Sixth Circuit has specifically held that a defendant's informed and voluntary waiver of the right to collateral attack bars any such relief.  *Hardin*, 595 F. App'x at 461; *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).

---

[7] Nasir cites to *Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001) as support for his contention that he received ineffective assistance of counsel for counsel's failure to object to his criminal history score. However, *Stanford* is not applicable here.  In *Stanford*, the defendant filed a motion pursuant to 28 U.S.C. § 2254 challenging his Kentucky state court conviction for murder, robbery, sodomy, and receipt of stolen property.  *Stanford*, 266 F.3d at 449.  In particular, defendant argued that he received ineffective assistance of counsel for his counsel's failure to life-qualify the jury during general voir dire.  *Id*. at 554-55.  In finding that defendant was not entitled to relief pursuant to this claim, the court held that defendant failed to show deficient performance by counsel and resulting prejudice.  *Id*.  As such, *Stanford* does not provide any factual or legal support for Nasir's argument.

Here, Nasir signed a Plea Agreement with the Government in this matter on October 21, 2013, which reads in pertinent part:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. *With the exception of any ineffective assistance of counsel claim, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.*

(R. 340, at 6 (emphasis added)).  Nasir now seeks to collaterally attack his sentence raising a number of grounds that are not based on claims that his attorney was ineffective.  Under the clear terms of his Plea Agreement, Nasir is not permitted to maintain these claims.  Although Nasir attempted to attack the validity of his Plea Agreement and the waiver therein by claiming that his plea was not knowing, intelligent and voluntary, this Court has already addressed those claims and found that they have no merit.  As such, Nasir's non-ineffective assistance of counsel claims are barred by his express waiver of his right to collateral attack contained in his Plea Agreement.

### 2.  Nasir's non-ineffective assistance of counsel claims are procedurally defaulted.

In addition to being barred by the waiver, Nasir's non-ineffective assistance of counsel claims are procedurally defaulted because Nasir did not raise them at his sentencing and did not file a direct appeal.  A federal prisoner's failure to raise a claim on direct appeal, with the exception of ineffective assistance of counsel claims, results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000).  For a federal prisoner to obtain review of a procedurally defaulted claim in a § 2255 motion, he must show cause for the default and actual

prejudice, or that he is actually innocent. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700; *Phillip*, 229 F.3d at 552.  This hurdle is an intentionally high one for a defendant to surmount, "for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal."  *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citing *United States v. Frady*, 456 U.S. 152, 165 (6th Cir. 1982)).

In an effort to overcome his procedural default, Nasir attempts to demonstrate cause and prejudice by arguing that his procedural default is a result of ineffective assistance of counsel.  Specifically, when prompted in his § 2255 form Motion to answer why he did not raise his present claims on appeal, Nasir claims that the "blame must be assessed to that of defense counsel." (R. 441, at 5; *see also* R. 441, at 4, 8).  Further, in his Reply, Nasir claims he is a layman and has received no legal training and, therefore, his failure to appeal his claims cannot be attributed to him but must, instead, be attributed to his counsel.  (R. 473, at 4-6).  Nasir argues that to hold him "answerable for an obligation charged to his attorney's [sic] would be nothing short of a 'miscarriage of justice' and above all, nonsensical."  (*Id*. at 4).  However, Nasir's attempt to show cause and prejudice through allegations of ineffective assistance of counsel is unsuccessful.

If a defendant's claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to an analysis under *Strickland*.  *See Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (the *Strickland* two-part test applies to a claim that counsel was ineffective for failing to file a notice of appeal).  Here, however, Nasir has not alleged that he instructed his counsel to file a Notice of Appeal on his behalf.  Further, he has not raised any allegations that his counsel failed to consult with him or had a duty to do so.  Absent any evidence, or even any allegations, that counsel

disregarded an explicit instruction by Nasir to file a notice of appeal, or that counsel failed to consult with petitioner regarding an appeal, Nasir has failed to carry his burden of demonstrating that counsel provided constitutionally deficient assistance by not filing a notice of appeal.

Moreover, Nasir cannot show that counsel's alleged failure to file a Notice of Appeal prejudiced him.  The Court has considered the merits of Nasir's claims in Sections II.A. and II.B above and in Section II.C.3. below and found they have no merit.  Finding Nasir has failed to establish ineffective assistance in this regard, Nasir's attempt to show cause and prejudice to overcome his procedural default fails.

However, a prisoner who fails to establish cause and prejudice may still be able to obtain review of a procedurally defaulted claim if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622–23 (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 624. Moreover, the actual innocence exception deals with a "severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the defendant].'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013)(internal citation omitted).

Although Nasir argues in his § 2255 Motion that he did not, in fact, violate the statutes under which he was convicted in this matter, he does not present any new evidence to demonstrate that it is more likely than not that no reasonable juror would have convicted him.  To the extent he was attempting to, his attempt is also unsuccessful.  As discussed below, the Court has considered this argument and found it to be without merit.

33

### 3. Nasir's non-ineffective assistance of counsel claims are without merit.

Finally, Nasir's non-ineffective assistance of counsel claims fail on the merits. Specifically, Nasir claims that: 1) his criminal history score for purposes of sentencing was unconstitutionally assessed two points pursuant to Sentencing Guidelines §§ 4A1.1(b) and 4A1.2(k); 2) he did not, in fact, violate the Controlled Substances Act or 21 U.S.C. §§ 846 and 841(a)(1); 3) 18 U.S.C. § 802(32), is unconstitutionally void for vagueness; and 4) the District Court erred in determining the amount of synthetic cannabinoids and analogues of synthetic cannabinoids that he conspired to distribute are meritless.

### a. Nasir's has not shown his criminal history score for purposes of sentencing was unconstitutionally assessed two points pursuant to Sentencing Guidelines §§ 4A1.1(b) and 4A1.2(k).

In his Motion, Nasir argues both that his criminal history score was unconstitutionally assessed two points and that his counsel was ineffective for failing to object to his criminal history score. As discussed in Section II.B.5. above, Nasir's criminal history score was correctly calculated. While Nasir contends that his criminal history score was unconstitutionally assessed two points pursuant to §§ 4A1.1(b) and 4A1.2(k), review of Nasir's PSR shows otherwise.

Specifically, Nasir argues that his criminal history score should not have been assessed two points due to his prior Fayette County, Kentucky conviction for Violation of a Kentucky EPO/DVO in Case No.: 07-M-06840 because he did not serve the sentence imposed in that case. However, Nasir's argument is incorrect. Nasir served his state sentence in Case No.: 07-M-06840 concurrently with his sentence imposed for his prior federal conviction in Case No.: 5:06-cr-00089-1-KSF. Under the law, two concurrently-served sentences imposed for two unrelated offenses should be treated as separate sentences for the purpose of calculating a defendant's criminal history score. As Nasir's

34

sentences in Case Nos.: 07-M-06840 and 5:06-cr-00089-1-KSF were unrelated, he was properly

assessed two points for his state conviction. As such, Nasir's argument that his criminal history was

unconstitutionally assessed two points for that conviction is without merit.

> **b**.     **Nasir has not shown that he did not, in fact, violate the Controlled Substances Act or 21 U.S.C. §§ 846 and 841(a)(1)**.

Nasir argues that he "did not violate the Controlled Substances Act or 21 U.S.C. § 846 and

§ 841(a)(1) as 'synthetic' marijuana do not produce the same effects as marijuana grown in a field."

(R. 441, at 8).  Specifically, he claims that "synthetic marijuana containing alleged JWH-122 and

AM 2201 does not have a stimulant, depressant, or hallucinogenic effect on the central nervous

system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic

affect on the central nervous system of JWH-018."  (*Id*.).  In support, he claims that the effects of

AM 2201 and JWH-018 on humans are not reliable and "studies have shown" that synthetic cannabis

produced "less pleasurable effects" than natural cannabis or marijuana.  (*Id*.).  He concludes that, as

a result of these assertions, he did not violate 21 U.S.C. § 846 and § 841(a)(1).  However, this

argument is contradictory to Nasir's prior testimony, has no merit, and was considered and rejected

by the District Judge pretrial.

> Under the law, a controlled substance analogue is defined as a substance:
>
> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or

> hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802 (32)(A). A controlled substance analogue is treated under the Controlled Substances Act as a controlled substance to the extent that it is intended for human consumption. 21 U.S.C. § 813.

Nasir's first allegation comparing the effects of synthetic cannabinoids to the effects of marijuana is without merit because the synthetic cannabinoids in this matter, JWH-122 and AM 2201, are not analogues of marijuana.  Rather, they are analogues of the Schedule I controlled substance JWH-018.  Nasir admitted as much in his Plea Agreement and at rearraignment.  In the Plea Agreement, Nasir pled guilty to distributing the two substances, JWH-122 and AM 2201, and acknowledged that those substances were controlled substance analogues of the controlled substance JWH-018. (R. 340, at 1-3).  Additionally, at the rearraignment hearing, the District Judge specifically went through each element of the offense charged with Nasir and Nasir admitted to committing each element of the offense.  Importantly, Nasir admitted that he knew that JWH-122 and AM 2201 were substance abuse analogues as defined by federal law.

| | |
|---|---|
| THE COURT: | Third, during the term and existence or the life of the agreement, you knew that the substance was a controlled substance analogue as defined by federal law; is that correct? |
| THE DEFENDANT: | Yes. |

Nasir's present arguments directly contradict his statements under oath at the rearraignment hearing. He is bound by his statements made under oath.

Further, this is not Nasir's first time raising this argument; he also made this claim when he joined an unsuccessful Motion to Exclude the Government's Expert Opinions on the topic. (R. 222).

The District Court held an evidentiary hearing on the Motion at which the Government's proposed expert, Dr. Michelle Walker, Ph.D., was called to testify.  Dr. Walker testified that "based on the pharamological data, receptor binding and activation studies on AM 2201 involving rodents, it was her opinion that AM 2201 was substantially similar pharmacologically and in physiological effect to JWH-018."  (R. 308, at 4).

After the evidentiary hearing, the Court denied Defendants' Motion to Exclude and would have permitted Dr. Walker to testify had the case gone to trial.  (*Id*. at 11).  Although Nasir argues that the effects of AM 2201 and JWH-018 on humans are not reliable, the presiding District Judge found otherwise.  In its Order denying the Motion, the Court held that the "Government has sufficiently demonstrated that the reasoning and methodology underlying Dr. Walker's testimony is scientifically valid and may be properly applied to the facts in issue." (*Id*. at 10).

Given the Court's prior evidentiary ruling on the issue and the fact that Nasir's present arguments are contradicted by his prior sworn statements, Nasir's argument fails and he is not entitled to § 2255 relief on this ground.

### c.      Nasir has not shown that 18 U.S.C. § 802(32) is unconstitutionally vague.

In this Reply, Nasir argues, for the first time, that 18 U.S.C. § 802(32), providing the definition for "controlled substance analogue," is unconstitutionally vague because it does not provide adequate notice of proscribed conduct and allows for arbitrary enforcement. Again, Nasir's raising of this argument for the first time in his reply filing is improper and the newly-raised claim could be rejected on that basis.  *See Sanborn*, 629 F.3d at 579; *see also McCorkle*, 2010 WL

37

2131907, at *7; *Burns,* 328 F. Supp. 2d at 724. It will therefore be recommended that this contention be denied as procedurally improper.

Further, a review of the merits of this claim demonstrates that it fails on the merits as well. The argument that 18 U.S.C. § 802(32) is unconstitutionally void for vagueness was raised by Nasir's co-Defendants in various pretrial motions to dismiss the Indictment or counts contained therein.  (R. 220; R. 225; R. 221).  Nasir joined in said motions.  (R. 228).  In the motions, Defendants argued that the definition of a "controlled substance analogue," codified in 18 U.S.C. § 802(32)(A) is unconstitutionally vague, both on its face and as applied, so as to prohibit Defendants' prosecution.  The presiding District Judge disagreed.  (R. 309).  In its Order denying the motions, the Court specifically found, among other things, that Defendants failed to show that: 1) the statute failed to provide adequate notice that their conduct was prohibited; and 2) the statute led to arbitrary enforcement.  (R. 309).  Nasir provides no reason for the District Judge to reconsider his prior ruling on this point.  As such, Nasir's claim on this issue lacks merit.

> **d.    Nasir has not shown that the District Court erred in determining the amount of synthetic cannabinoids and analogues he conspired to distribute.**

In his Reply, Nasir argues for the first time that the District Court erred in determining the amount of synthetic cannabinoids that he conspired to distribute.  However, as discussed above, the fact that this claim was first raised in Nasir's reply filing is basis enough to reject it.  *See Sanborn*, 629 F.3d at 579; *see also McCorkle*, 2010 WL 2131907, at *7; *Burns,* 328 F. Supp. 2d at 724. It will therefore be recommended that this claim be denied as procedurally improper.

Further, as discussed in Section II.B.4. above, both Nasir's Plea Agreement and his PSR specifically stated that Nasir admitted to conspiring to distribute 700 to 1,000 kilograms of synthetic

cannabinoids.  Nasir stated, under oath, that he had read the Plea Agreement and understood its terms.  Nasir also admitted he had reviewed the PSR and had no objection to its contents.  The District Court did not err in determining the amount of drugs attributed to Nasir given the clear factual basis for the plea that was admitted by Nasir in open court and affirmed by him at sentencing. Further, giving Nasir's sworn statements the presumption of verity due under the law, Nasir's present argument challenging that amount of drugs attributed to him is without merit.  *Blackledge,* 431 U.S. at 73-74.

### D.      Nasir is not entitled to an evidentiary hearing or appointment of counsel.

As a final matter, Nasir requests an evidentiary hearing and appointment of counsel.  For the reasons below, both requests should be **denied**.  Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, to receive a hearing, a defendant must make allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008).  Here, as delineated above, the record in this case conclusively shows that Nasir is not entitled to relief.   Furthermore, other than his own unsubstantiated and self-serving statements, Nasir has not identified any additional evidence he

could present at an evidentiary hearing. For these reasons, an evidentiary hearing is not required, and it will be recommended that Nasir's request be denied.

As for Nasir's request for appointment of counsel, counsel is appointed to represent a defendant in habeas proceedings only in limited circumstances. Specifically, the Criminal Justice Act provides: "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." *See* 18 U.S.C. § 3006A(a)(2)(B).  As indicated by the permissive language of the statute, no constitutional right to counsel exists in a habeas proceeding.  *See Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) (recognizing that a petitioner has no right to counsel in a habeas proceeding) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)).  Accordingly, the decision to appoint counsel in circumstances of a § 2255 motion is solely within the discretion of the court, and counsel should be appointed only if justice so requires.  *See United States v. Thornton*, Civ. No. 06-459-DCR, 2007 WL 1741780, at *1 n.1 (E.D. Ky. May 25, 2007).

Here, Nasir has already filed a *pro se* § 2255 Motion and Reply in this Court and has not presented any unusual complexities, problems, or conflicts requiring appointment of counsel. Because Nasir has failed to demonstrate that justice requires appointment of counsel, and the Court recommends denial of the Motion on the merits, the request for counsel should be denied.

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate may issue only if a defendant has made a substantial showing of the denial of a

constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255.  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Nasir's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

(1)    Defendant Zafar Iqbal Nasir's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 441) be **denied;**

(2)    Defendant's Motion for Appointment of Counsel be **denied**;

41

(3)     Defendant's Motion for an Evidentiary Hearing be **denied**;

(4)     a Certificate of Appealability be **denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

(5)     Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(6)     this action be stricken from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 30th day of November, 2016.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 R&R general\12-102 Nasir R&R.final.wpd